DONNA R. ZIEGLER [SBN 142415]
County Counsel
RAYMOND L. MACKAY [SBN 113230]
Senior Deputy County Counsel
Office of County Counsel
COUNTY OF ALAMEDA
1221 Oak Street, Suite 450
Oakland, California 94612
Telephone:   (510) 272-6700

Attorneys for Defendants County of Alameda
and Lucia Hui

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AJATI SANKOH,<br><br>            Plaintiff,<br><br>      v.<br><br>LUCIA HUI, et al.,<br><br>            Defendants. | Case No.: 3:16-cv-03645-LB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br>[FRCP Rule 56]<br><br>Hearing Date:  July 13, 2017<br>Hearing Time:  9:30 a.m.<br>Courtroom:       C<br>Location:         450 Golden Gate Avenue<br>                        San Francisco, CA 94102<br>Judge:            The Hon. Laurel Beeler |

**TO PLAINTIFF AJATI SANKOH:**

NOTICE IS HEREBY GIVEN that on the above date/time and location, pursuant to Federal Rules of Civil Procedure, Rule 56, the Defendants County of Alameda and Lucia Hui will move the Court for an Order granting Summary Judgment in their favor and against Plaintiff. The grounds for the Motion are that Plaintiff's claims against these Defendants are barred by the 2015 Settlement Agreement signed by Plaintiff, and that there is no triable issue of material fact with respect thereto.

---

Defendants' MPA's iso MSJ; Case No: 16-cv-03645

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I. FACTUAL BACKGROUND AND SETTLEMENT AGREEMENT........................... 1

   A. Plaintiff's Employment History and Related Discipline Proceedings ................ 1

   B. Civil Service and Administrative Hearing Proceedings Challenging Termination ....................................................................................................... 3

   C. June 23, 2015 Settlement Agreement................................................................ 5

   D. Pending Civil Rights Lawsuit............................................................................ 6

II. RELEVANT LEGAL AUTHORITY ....................................................................... 7

III. ARGUMENT ............................................................................................................ 8

   A. Plaintiff's Lawsuit Is Barred by the 2015 Settlement Agreement...................... 8

      (1) Clarity and Lack of Ambiguity of the Agreement ........................................ 8

      (2) Plaintiff's Education and Experience............................................................ 9

      (3) The Presence of a Non-Coercive Atmosphere for Execution of the Release ........................................................................................................ 10

      (4) Whether the Plaintiff Had the Benefit of Legal Counsel ........................... 10

IV. CONCLUSION....................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Jones v. Taber*,
  648 F.2d 1201 (9th Cir. 1981) ............................................................................... 7, 8

*Lemus v. Denny's, Inc.*,
  617 Fed.Appx. 701 (9th Cir. 2015) ............................................................................ 10

*Salmeron v. United States*,
  724 F.2d 1357 (9th Cir. 1983) .................................................................................. 8

*Stroman v. W. Coast Grocery Co.*,
  884 F.2d 458 (9th Cir. 1989) ............................................................................ 7, 8, 9

**Federal Rules**

Federal Rules of Civil Procedure, Rule 56 ................................................................. 1

**State Statutes**

California Civil Code §1692 ........................................................................................ 7

Title VII of the Civil Rights Act of 1964 ................................................................. *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND AND SETTLEMENT AGREEMENT

### A. Plaintiff's Employment History and Related Discipline Proceedings

On or about **August 8, 2013**, Ryan Silva, a co-owner of Euro Auto Repair Service in Hayward, left a phone message with Joanne Christianson, Supervising Vector Control Officer for the County of Alameda's Department of Environmental Health ("DEH"). See **Exhibit A**, at pages 3, 13 ("**A-3** and **A-13**"). [1] Mr. Silva alleged that Plaintiff (at the time a Vector Control Officer with DEH) harassed him and physically and verbally threatened to "shut down" his auto shop business because Plaintiff felt Mr. Silva had cheated him regarding repairs to Plaintiff's Porsche. **Exhibit A-3**; **A-13**.

On **August 20, 2013**, the County placed Plaintiff on paid administrative leave pending completion of its investigation regarding those allegations.

Following that investigation, which included witness interviews, County Investigator Sharon Rhodes, (Department Personnel Officer, Health Care Services Agency, Human Resources) determined that Mr. Silva's allegations of harassment were **substantiated**; that Plaintiff misused his position with the County to threaten to shut down Mr. Silva's auto repair business; and that Plaintiff was conducting personal affairs on County time, including using a County vehicle related to personal business. Ms. Rhodes recommended that Plaintiff be terminated from his position with the Department of Environmental Health. See Ms. Rhodes' January 7, 2014 Report (**Exhibit A-2 to A-22**).

On **May 7, 2014**, the County of Alameda provided written Notice to Plaintiff of those investigation findings and recommendation. **Exhibit B.**

---

[1] Defendants' **Exhibit A** through **Exhibit E** are attached to the accompanying Declaration of Jet Chapman. **Exhibit A** is the County's September 16, 2014 Notice of Intent to Discipline (Termination) provided to Plaintiff at the time including multiple Attachments to the Notice. For this Motion and for citation and reference purposes, each page of **Exhibit A** has been individually paginated in numerical order (**A-1** through **A-176**).

Subsequently, on **June 12, 2014** (**after** receiving the written notice of the investigation findings regarding harassment and misuse of County property/time), Plaintiff filed an internal Complaint with the County alleging racial discrimination and failure to be promoted. In response to that internal Complaint, the County conducted an administrative investigation between June and August 2014 performed by Cindy Charan-Turner, County Health Care Services, Human Resources. **Exhibit C**, page 1.

On **September 12, 2014**, the County (Ms. Charan-Turner) notified Plaintiff of the completion of its findings of the investigation. See **Exhibit C**. including the determination that Plaintiff's allegations of racial discrimination were **not substantiated**; and that a review of the positions Plaintiff had applied for showed that Plaintiff either did not meet the minimum qualifications (including licensing and certification requirements) for the job, or that other qualified applicants, some of whom were African-American, were chosen for the position. **Exhibit C**.

Having completed that investigation, the County recommenced the disciplinary proceedings.[2] On **September 16, 2014**, the County served Plaintiff with a written Notice of Intent to Discipline (Termination) based on the findings of its investigation including the findings of Mr. Sankoh's harassment and his misuse of County property/time and position. See Notice of Intent to Discipline; **Exhibit A-1 to A-5**.

The proposed discipline (termination) was based on two (2) Charges: (1) Dishonesty and abuse of position in connection with plaintiff's intimidation and threats to Mr. Silva; and (2) Dishonesty and misuse of County property and time in connection with plaintiff's use of a County vehicle and substantial travels/time spent outside his assigned work area of Fremont and Newark to conduct personal business during assigned work hours. ***Ibid.***

---

[2] To ensure that any proposed discipline would not be based on prohibited discriminatory conduct, the disciplinary proceedings were suspended until completion of the investigation into Plaintiff's discrimination complaints by Ms. Charan-Turner and provision of the Disposition Findings (**Exhibit C**) to Mr. Sankoh.

On **October 8, 2014**, a due process "*Skelly*" Hearing was scheduled to allow Plaintiff an opportunity to respond to the proposed discipline. On **October 24, 2014**, the *Skelly* Hearing was conducted before Hearing Officer Brad Maggy, a Labor Relations Analyst with the Alameda County Human Resource Service. **Exhibit D** and **Exhibit E** (at p. 2).

After consideration of all investigatory information including information received at the *Skelly* hearing, the Agency Director (Alex Briscoe) determined that the recommended discipline was appropriate under the circumstances, and Plaintiff was terminated from his position of Vector Control officer, effective **November 7, 2014**. See October 30, 2014 letter from Alex Briscoe, Dir., Healthcare Services Agency; **Exhibit E**.

### B. <u>Civil Service and Administrative Hearing Proceedings Challenging Termination</u>

By letter dated November 12, 2014, Plaintiff requested an Appeal Hearing with the Alameda County Civil Service Commission to challenge his termination. **Exhibit F**.[3] Notice was provided to plaintiff's counsel (Denise Eaton May, Esq.) and the County's counsel (Deputy County Counsel Beatrice Liu) by the Office of Administrative Hearings for the State of California ("OAH") that the Appeal was assigned \ Agency case #2014-25; and OAH case #20150220216. **Exhibit G**.

On February 27, 2015, the parties and counsel were then notified that Administrative Law Judge Diane Schneider was assigned to hear the Appeal and that the matter was set for Hearing for June 1-5, 2015. **Exhibit H**.

On April 10 2015, Judge Schneider notified the parties and counsel that a telephonic Prehearing Conference for Friday, April 17, 2015. **Exhibit I**.

Following that Conference, Judge Schneider confirmed the Hearing dates for

---

[3] Defendants' **Exhibits F** through **Exhibit P** are attached to the accompanying Declaration of Beatrice Liu ("Liu Declaration").

1  June 1-4, 2015 with additional dates for Hearing of June 8-10, 2015. **Exhibit J**. Judge Schneider further ordered both counsel to prepare binders containing their respective Exhibits and meet and confer regarding the presentation/admission of evidence and scheduling of witnesses. *Ibid.*

On May 26, 2015, Plaintiff's counsel submitted to the OAH Plaintiff's written Statement of Defenses to the termination. **Exhibit K**.

However, on the first day of the hearing Hearing (June 1, 2015) counsel for the County and Plaintiff reached a verbal Settlement Agreement of material terms which was approved by Mr. Sankoh. Liu Declaration at ¶ 9.

Counsel for both parties informed Judge Schneider that the parties had reached that settlement, and jointly requested a continuance until June 15, 2015 to allow them to finalize the terms of the Settlement Agreement. **Exhibit L**. Judge Schneider continued the matter to June 15, 2015 for the purpose of setting a new Hearing date in the event the matter does not settle. **Exhibit L**.

On June 2, 2015, Ms. Liu send to Plaintiff's counsel a proposed written Settlement Agreement encompassing the terms verbally agreed upon on June 1, 2015, and ask that Plaintiff's counsel and Plaintiff sign and return the Agreement. Liu Declaration at ¶ 11; and **Exhibit M**. However, subsequently, Plaintiff's counsel informed Ms. Liu that Mr. Sankoh was no longer agreeable to settling the matter. Liu Declaration at ¶ 12.

Consequently, by Order dated June 15, 2015, Judge Schneider rescheduled the matter for a Prehearing Conference on June 23, 2015 as well as a Mandatory Settlement Conference ("MSC"). **Exhibit N**.

**C. June 23, 2015 Settlement Agreement**

On June 23, 2015, the parties and counsel participated in the MSC conducted by OAH ALJ David Benjamin. Liu Declaration at ¶ 13.

At that MSC, Judge Benjamin met with both parties separately from the other in a series of private caucuses. As he did so, Judge Benjamin relayed information back and forth between the parties as to potential offers and counter offers. Liu Declaration at ¶ 14. At no time during the MSC did the County's attorney or representative speak directly to Mr. Sankoh without his attorney being present. Offers and counter offers were communicated through Judge Benjamin. Liu Declaration at ¶ 17.

After several back-and-forth caucuses with Judge Benjamin, the County agreed to rescind Mr. Sankoh's termination, pay him 4 months of additional salary, and accept his voluntary resignation, effective March 7, 2015, to which Mr. Sankoh and his attorney expressly agreed. Liu Declaration at ¶ 15.

Near the conclusion of the MSC, and in the presence of Judge Benjamin, the parties and counsel including Mr. Sankoh and his counsel signed a written Settlement Agreement and Release (**Exhibit O**) embodying the terms of the parties' Settlement Agreement reached that day. Liu Declaration at ¶ 16.

The signed Settlement Agreement (**Exhibit O**) provides *inter alia*:

> [**Plaintiff**] **agrees to release, acquit, and forever discharge COUNTY**… **and County's employees, agents** and individual Board of Supervisors members… **from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses or compensation, on account of, or in any way growing out of**, any and all known unknown personal injuries or damages to any property, **loss of civil rights, denial of due process, constitutional claims, economic loss, damage to reputation, or any other cause of action relating to his employment** or the underlying circumstances that prompted the proposed action described in the September 16, 2014 Intent to Discipline letter referenced above, **including but not limited to any and all claims under Title VII of the Civil Rights Act of 1964**,

as amended…and any other local, state or federal law or constitution governing employment… (**Exhibit O**, ¶ 6; emphasis added).

Furthermore, under the express terms of the Settlement Agreement, Plaintiff agreed to "withdraw and/or dismiss his DFEH/EEOC Complaint filed on or about August 6, 2014 (EEOC Charge No. 37A-2014-04916-C; DFEH #294331-114741) for discrimination based upon race and retaliation **with prejudice**…." *See* **Exhibit O**, ¶ 5(b).

After the parties reached this Settlement Agreement with the assistance of Judge Benjamin (**Exhibit O**), Plaintiff withdrew his Appeal and the County requested dismissal of the proceedings. **Exhibit P**.

By Order dated July 2, 2015, Judge Benjamin dismissed Plaintiff's Appeal based on that written Settlement Agreement and on Plaintiff having withdrawn the Appeal. **Exhibit P**.

### D. Pending Civil Rights Lawsuit

Plaintiff brings this pending lawsuit "pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination." Docket #29, p. 1 of 6 (¶ 3 to Complaint). Plaintiff alleges he was terminated from his employment due to his race or color and/or national origin. Docket #29, pp. 1 and 2 of 6 (¶'s 4 and 5 to).

Plaintiff further alleges that, in or about July 2013, individuals at his employment (Ariu Levy and Lucia Hui) treated him differently because of his race and that he was terminated because of his race and national origin and suffered "retaliation, application of force, bulling [sic] and course of power/behavior" after he engaged in "protected activity in June 2013 when [he] complained to HR about unfair and discriminatory treatment and denial of promotions…." Docket #29, p. 2 of 6 (¶ 6). Also, Plaintiff alleges that unspecified disciplinary action was based on inaccurate (and possibly incomplete)

1 information. Docket #29, p. 2 of 6 (¶ 6).

2 For the reasons discussed below, Plaintiff's claims are barred by the 2015 Settlement Agreement signed by Plaintiff and his counsel on June 23, 2015 following the judicially-supervised Settlement Conference conducted by Judge Benjamin.[4]

## II.   RELEVANT LEGAL AUTHORITY

A leading Ninth Circuit case addressing the validity of settlement agreements and releases is *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458 (9th Cir. 1989).

Importantly, the Court in *Stroman* first confirmed the strong public policy **favoring** voluntary settlement of employment discrimination claims including claims brought under Title VII. *Id.* at 460-61(citations omitted).

With that public policy in mind, the Court then observed that a settlement and release of employment discrimination claims is valid and enforceable if it results from a decision that is "voluntary, deliberate, and informed." *Ibid.* at 462 citing *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983); and *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981).

The Court observed that such a determination is "predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Ibid.* at 462 (citations omitted) .[5]

---

[4] This Motion is made by Defendants reserving rights re: recovery of the settlement check the County provided the Plaintiff per the Settlement Agreement (and which Plaintiff cashed) should Plaintiff establish he is entitled to rescission of the Agreement. See accompanying T. Nguyen Declaration at ¶'s 2-4. *Cf.* California Civil Code §1692.

[5] Under federal law, a valid release also must be supported by consideration. *Salmeron v. United States*, 724 F.2d 1357, 1362 (9th Cir.1983). Here, Plaintiff does not allege, nor could he do so truthfully, that he received no consideration as part of the 2015 Settlement Agreement and Release (**Exhibit O**). The undisputed facts are that he received substantial consideration including 4 months of additional salary as part of the Settlement Agreement (**Exhibit O**, ¶ 4); and that Plaintiff cashed one of the settlement checks. Declaration of T. Nguyen at ¶'s 2-4.

In that analysis, the Court considered "all the circumstances" including but not necessarily limited to **four factors**: (1) "the clarity and lack of ambiguity of the agreement"; (2) "the plaintiff's education and business experience"; (3) "the presence of a non-coercive atmosphere for the execution of the release"; and (4) "whether the [plaintiff] had the benefit of legal counsel." *Ibid.* at 462 (citations omitted).

### III.   ARGUMENT

#### A. Plaintiff's Lawsuit Is Barred by the 2015 Settlement Agreement

Here, analyzing all the circumstances (including the 4 factors discussed in *Stroman, supra*) and recognizing the public policy favoring voluntary settlement of employment discrimination claims, the County submits that Plaintiff's decision to sign the Settlement Agreement (**Exhibit O**) at the conclusion of the judicially supervised MSC on June 23, 2015 *was* voluntary, deliberate, and informed and bars his pending lawsuit.

#### (1) Clarity and Lack of Ambiguity of the Agreement

Here, the Settlement Agreement clearly and unambiguously states that, by signing the Agreement, Plaintiff agreed to release and discharge these Defendants from all employment related claims and causes of action asserted in his Complaint (Docket #1) including any and all claims arising "**under Title VII of the Civil Rights Act of 1964**." *See* 2015 Settlement Agreement, **Exhibit O**, ¶ 6. Emphasis added.

Moreover, as part of that Agreement, Plaintiff further agreed to "**withdraw and/or dismiss his DFEH/EEOC Complaint** filed on or about August 6, 2014 (EEOC Charge No. 37A- 2014-04916-C; DFEH #294331-114741) **for discrimination based upon race and retaliation**. *See* **Exhibit A**, ¶ 5(b).[6]

---

[6] The June 29, 2015 "Notice of Case Closure" (due to "Insufficient Evidence") letter from the California DFEH (attached to Plaintiff's First Amended Complaint) expressly

In addition, per the clear and unambiguous language in the 2015 Settlement Agreement, Plaintiff expressly acknowledged and agreed that he **had read and understood the provisions** of the Agreement; and that he **had the opportunity to discuss the terms of the Agreement with his attorney** (if for example he was in fact confused about any of the terms of the Agreement); that he had in fact done so. **Exhibit O**, ¶ 9.

### (2) Plaintiff's Education and Experience

In his own words, Plaintiff is a sophisticated, well-educated businessman who was able to run a part-time "side business" in addition to his work as a Vector Control Officer for the County Department of Environmental Health. **Exhibit A-16**; and **A-76** (October 26, 2001 letter from Plaintiff to Supervising Vector Control Officer Joanne Ringot-Christianson). Plaintiff is also experienced and well-versed in filing complaints and claims against individuals or businesses. **Exhibit A-30** to **A-32**; **A-82** to **A-86,** and **A-98** to **A100.**

Based on his background and experience, Plaintiff necessarily understood that when he signed the Settlement Agreement he was waiving and releasing all claims against the County and County employees related to his employment including any Title VII claims. *Cf. Stroman, supra*, 884 F.2d at 462-463 ("[a]lthough Stroman was not a sophisticated businessman, his training in the Army and his business management-related community college degree convince us that Stroman possessed the education and skills necessary to understand that when he signed the agreement he waived all legal claims against West Coast. He was sufficiently intelligent to understand that 'all claims' meant all legal claims, including claims brought under Title VII").

---

references both "EEOC Charge No. 37A- 2014-04916-C" and "DFEH #294331-114741." Docket #29, at p. 5.

### (3) The Presence of a Non-Coercive Atmosphere for Execution of the Release

Here, the Settlement Agreement was signed by Plaintiff following a Settlement Conference conducted and supervised by a neutral judicial officer (Judge Benjamin) in a non-coercive atmosphere. There was nothing which Judge Benjamin or the County did which could possibly be characterized as "coercion" or involving "overwhelming pressure" *Cf. Lemus v. Denny's, Inc.*, 617 Fed.Appx. 701, 704 (9th Cir. 2015) (referencing Black's Law Dictionary defining "coercion" as "[c]ompulsion by physical force or threat of physical force" and to "compel" as "[t]o cause or bring about by force, threats, or overwhelming pressure").

If Plaintiff (represented by counsel at the time) had not been willing to enter into the settlement terms following the judicially-supervised Conference with Judge Benjamin, Plaintiff certainly could have declined to sign the Agreement.  In fact, **earlier, Plaintiff did just that**: *viz.*, Plaintiff had declined to sign the first proffered Settlement Agreement (embodying the verbal settlement agreement reached on June 1, 2015). See Liu Declaration at ¶'s 9-11.

Instead, here, on June 23, 2015 after several back-and-forth caucuses with Judge Benjamin, Plaintiff agreed to release the County and County employees from **all employment-related claims, known or unknown**, and signed the Settlement Agreement (**Exhibit O**) expressly providing for that release.

### (4) Whether the Plaintiff Had the Benefit of Legal Counsel

Here, Plaintiff was represented by Counsel (Denise Eaton-May, Esq.) throughout his entire Appeal of his termination through to and including the judicially-supervised Settlement Conference conducted by Judge Benjamin on June 23, 2015. See **Exhibit O** ¶ 9 ("[Plaintiff] acknowledges and agrees that… **he had the opportunity to discuss**

**the terms of this agreement with counsel** or representative of his choice; that **he discussed the terms of this agreement with his attorney Denise Eaton-May**, that he has **freely and voluntarily entered into this settlement agreement**…"; Emphasis added).

As with the other 4 *Stroman* factors, *supra*, this undisputed fact supports finding that Plaintiff entthe 2015 Settlement Agreement and release of claims against the County and County employees was voluntary, deliberate and informed.

## IV. CONCLUSION

Under the circumstances here, in addition to the 4 *Stroman* factors discussed above, public policy strongly favors a finding that Plaintiff's lawsuit is barred by the 2015 Settlement Agreement (**Exhibit O**). If not, all Employers including the County would never be able to settle or resolve any employment dispute because the employee (as Mr. Sankoh attempts to do here) would simply turn around and sue anyway.

For these reasons, Defendants submit that Plaintiff's lawsuit is barred by the 2015 Settlement Agreement which Plaintiff, represented by counsel at the time, entered into voluntarily, deliberately and knowingly; and that there is no triable issue of material fact with respect thereto. Therefore, this Summary Judgment Motion should be granted.

Dated:   May 23, 2017          Respectfully Submitted,

Office of the County Counsel for the
County of Alameda, State of California

By  /s/ *Raymond L. Mackay*
       RAYMOND L. MACKAY
       Senior Deputy County Counsel
       Attorneys for Defendants