UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AJATI SANKOH,<br><br>           Plaintiff,<br><br>    v.<br><br>LUCIA HUI, et al.,<br><br>           Defendants. | Case No. 16-cv-03645-LB<br><br>**ORDER GRANTING THE DEFENDANTS' SUMMARY-JUDGMENT MOTION**<br><br>Re: ECF No. 53 |

**INTRODUCTION**

This is an employment-discrimination action.[1] Ajati Sankoh worked for the Alameda County Environmental Health Department.[2] He claims that the County and his supervisor Lucia Hui failed to promote him and eventually terminated him based on his race and national origin.[3] Ms. Hui and the County move for summary judgment on the ground that the parties settled, and Mr. Sankoh released employment claims in a settlement agreement.[4] The court found the matter suitable for determination without oral argument under Civil Local Rule 7-1(b) and vacated the July 13, 2017

---

[1] *See generally* First Amended Complaint ("FAC") – ECF No. 29.  Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] *See id.* at 1.

[3] *See id.* at 1–3.

[4] Motion for Summary Judgment – ECF No. 53.

ORDER – No. 16-cv-03645-LB

hearing. The court grants the summary-judgment motion because the parties' settlement agreement bars Mr. Sankoh's claims here.

**STATEMENT**

Mr. Sankoh worked as a Vector Control Officer for the County, which fired him in 2014 — after a year-long investigation — for dishonesty, abuse of his position, and misuse of a County car.[5] In brief, Mr. Sankoh used his position to threaten an automobile mechanic to avoid paying the full cost of repairs to his Porsche, used his work car inappropriately (to visit the repair shop), and was a repeat offender.[6]

In May 2014, the County closed its investigation and informed Mr. Sankoh that his conduct violated Rules 2100 and 2104 of the Rules and Regulations of the Alameda County Civil Service Commission.[7] Mr. Sankoh then lodged a complaint alleging the County discriminated against him based on his race when it failed to promote him or reimburse him for training expenses.[8] The County investigated Mr. Sankoh's allegations and concluded that they were not substantiated.[9] The County held a pre-termination administrative hearing (called a Skelly hearing).[10] *See Skelly v. State Pers. Bd.*, 529 P.2d 774 (Cal. 1975). In November 2014, the County fired Mr. Sankoh.[11] He then appealed.[12]

On appeal, the Office of Administrative Hearings ("OAH") scheduled five hearing dates in June 2015.[13] Mr. Sankoh, who was represented by counsel, filed a statement of defenses that

---

[5] Chapman Decl. – ECF No. 53-1, Exs. A–E.
[6] *Id.*, Exs. A–B.
[7] *Id.*, Ex. B.
[8] *Id.*, Ex. C.
[9] *Id.*
[10] *Id.*, Ex. D.
[11] *Id.*, Ex. E.
[12] Liu Decl. – ECF No. 53-2, Ex. F.
[13] *Id.*, Ex. G.

ORDER – No. 16-cv-03645-LB                    2

included allegations that he suffered disparate treatment based on his race.[14] Before the first hearing commenced, the parties told OAH Administrative Law Judge ("ALJ") Diane Schneider that they had reached a settlement and asked to continue the hearing approximately two weeks to June 15, 2015.[15] The County sent Mr. Sankoh and his counsel a proposed settlement agreement.[16] Mr. Sankoh's lawyer then told the County that Mr. Sankoh no longer wanted to settle.[17] ALJ Schneider set a prehearing conference and mandatory settlement conference.[18]

The parties attended the mandatory settlement conference on June 23, 2015, and settled the case with a settlement agreement dated June 23, 2015.[19] OAH ALJ David Benjamin conducted the settlement conference; Mr. Sankoh was represented by counsel at all times.[20] The County agreed to rescind Mr. Sankoh's termination, pay him seven months of additional salary, and accept his voluntary resignation.[21] Mr. Sankoh agreed to resign, withdraw his appeal, withdraw the complaints filed with the Equal Employment Opportunity Commission ("EEOC") and California Department of Fair Employment and Housing ("DFEH"), and release any and all claims against the defendants.[22] The full release is as follows:

> [Mr. Sankoh] agrees to release, acquit, and forever discharge [the County] and each of its predecessors, successors, assigns, heirs, principals, attorneys, all of their officers, boards, commissions, agencies, and County's employees, agents and individual Board of Supervisors members, and government entities whether previously or hereafter affiliated in any manner, individually and collectively, from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses or compensation, on account of or in any way growing out of, any and all known and unknown personal injuries or damages to any property, loss of civil rights, denial of due process, constitutional claims, economic loss, damage to reputation, or any other causes of action relating to his employment or the

---

[14] *Id.*, Ex. K.
[15] *Id.*, Ex. L.
[16] *Id.*, Ex. M.
[17] Liu Decl., ¶ 12.
[18] Liu Decl., Ex. N.
[19] *Id.*, Ex. O.
[20] Liu Decl., ¶ 17.
[21] *Id.*, ¶¶ 14–15.
[22] Liu Decl., Ex. O, ¶¶ 5–6.

underlying circumstances that prompted the proposed action described in the September 16, 2014 Intent to Discipline letter referenced above, including but not limited to any and all claims under Title VII of the Civil Rights Act of 1964, as amended, the American with Disabilities Act, as amended, the Employee Retirement Income Security Act, as amended, the California Constitution, the California Fair Employment and Housing Act, as amended, the California Labor Code, and any other local, state or federal law or constitution governing employment or the payment of wages and benefits and any claim for reimbursement of expenses of any type or kind, except as prohibited by public policy.[23]

On June 28, 2016, Mr. Sankoh filed this lawsuit claiming the County failed to promote and wrongfully terminated him based on his race and national origin.[24] The defendants then moved for summary judgment based on the written settlement agreement and release.

## GOVERNING LAW

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and presenting evidence that demonstrates the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

---

[23] *Id.*, Ex. O, ¶ 6.

[24] *See generally* FAC.

1   If the moving party meets its initial burden, the burden shifts to the non-moving party to

2   produce evidence supporting its claims. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving

3   party may not rest upon mere allegations or denials of the adverse party's evidence, but instead

4   must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Id.*

5   at 248–49. If the non-moving party does not produce evidence to show a genuine issue of material

6   fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

## ANALYSIS

The parties' settlement agreement — and Mr. Sankoh's release — bar this lawsuit. A settlement agreement is binding and enforceable like any other contract. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); see also *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). To be enforced, a settlement agreement must meet two requirements. First, it must be a "complete agreement." *Callie*, 829 F.2d at 890. Second, both parties must have agreed to the terms of the settlement. *Id.*

When evaluating a release of Title VII claims, as distinct from a settlement agreement as a whole, courts consider whether the release was voluntary, deliberate, and informed. *See Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir. 1989); *see also Evans v. Asian American Recovery Services*, No. 08-CV-0944-EMC, 2008 WL 5273748, at *7 (N.D. Cal. Dec. 19, 2008). Courts consider the clarity of the language of the release, the plaintiff's education and experience, the atmosphere in which the release was executed, and whether the plaintiff had the benefit of legal counsel. *Stroman*, 884 F.2d at 462.

Mr. Sankoh does not challenge the general enforceability of the settlement agreement and instead asserts that he rescinded this agreement.[25] He attaches a letter documenting that he wanted to rescind the agreement.[26] But he cannot change his mind and thereby rescind the binding and enforceable settlement agreement. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir.

---

[25] Opposition – ECF No. 57 at 5.

[26] Sankoh Decl. – ECF No. 58, Ex. C.

ORDER – No. 16-cv-03645-LB         5

1  2002).

2  Mr. Sankoh also charges his attorney with failing to disclose the agreement's material terms
3  and says that he overlooked the "small print" that County counsel "slipped into the agreement
4  without discussing it . . . ."[27] But he does not dispute that he signed the written agreement or that it
5  reflects the parties' entire agreement. To the extent that he says that he did not read the agreement
6  fully, that does not change the conclusion that it is binding and enforceable. *See Desert Outdoor*
7  *Adver. v. Super. Ct.*, 196 Cal. App. 4th 866, 872 (2011).

8  Mr. Sankoh also argues that his attorney and the settlement judge pressured him to sign the
9  agreement and that his execution of it — including its release — was not voluntary.[28] But the
10 settlement was complete, its terms are clear, Mr. Sankoh was represented by counsel, and he
11 accepted the settlement terms and signed the agreement.[29] These are factors that courts consider
12 when evaluating whether a release of employment-discrimination claims is voluntary, deliberate,
13 and informed. *See Stroman*, 884 F.2d at 462. He does not argue — nor does the record suggest —
14 that he lacked the education or experience to understand the release. *See, e.g.*, *Evans*, 2008 WL
15 5273748, at *4. Indeed, he represented himself capably in his papers opposing the County
16 defendants' summary-judgment motion. In sum, the settlement agreement is binding and
17 enforceable, and its release bars this lawsuit.

18                                **CONCLUSION**

19 The court grants the defendants' summary-judgment motion.

20 **IT IS SO ORDERED.**

21 Dated: July 13, 2017

22                                 _____
23                                 LAUREL BEELER
                                    United States Magistrate Judge

---

[27] Sankoh Decl., ¶ 29.
[28] *Id.*, ¶¶ 30, 37.
[29] Liu Decl., ¶ 17, Ex. O; Sankoh Decl., ¶¶ 10–11, 43.

ORDER – No. 16-cv-03645-LB                6